

**FILED**
SEP - 9 2016
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. **16 CR 575** |
|---|---|
| v. | Violation: Title 18, United States Code, Section 1343 |
| JOHN ROGERS | |

**JUDGE DURKIN**
**MAGISTRATE JUDGE MASON**

<u>INFORMATION</u>

The UNITED STATES ATTORNEY charges:

1. At times material to this information:

   a. Defendant JOHN ROGERS was the owner and president of Sports Card Plus and Rogers Photo Archive, LLC, both of which were headquartered in North Little Rock, Arkansas. Sports Card Plus' business included the purchase and sale of sports memorabilia. Rogers Photo Archive contracted with publishing organizations to digitize photograph archives. Defendant ROGERS operated, controlled, and managed all business operations, activities, and affairs of Sports Card Plus and Rogers Photo Archive.

   b. The Heisman Memorial Trophy Award, commonly referred to as the Heisman Trophy, was awarded annually to the player deemed the most outstanding player in collegiate football, and has been awarded annually since its creation in 1935. On rare occasions, a ceremonial Heisman Trophy was awarded to individuals who did not play college football. One such instance occurred in 1960 when Individual 1 was awarded an honorary Heisman Trophy for serving as the

master of ceremonies at the Heisman Trophy banquet sponsored by the Downtown Athletic Club in New York City for over 20 years.

   c. Player 1 was a former Heisman Trophy winner and it was widely recognized in the sports memorabilia industry that, since 1999, Player 1 was one of only a few Heisman Trophy winners who sold their trophies. Player 1's Heisman Trophy held significantly more value than Individual 1's Heisman Trophy.

   d. In November 2009, defendant ROGERS purchased the Individual 1 Heisman Trophy from a sports memorabilia auction house.

   2. Beginning no later than 2009 and continuing until in or about January 2014, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN ROGERS,

defendant herein, devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from investors, customers, and financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described below.

   3. It was part of the scheme that defendant ROGERS used Sports Card Plus and Rogers Photo Archive to fraudulently obtain at least approximately $10 million from victim investors, financial institutions, and customers, by making and causing to be made materially false statements about Sports Card Plus and Rogers Photo Archive, including false statements about the assets held by the

companies, the total value of those assets, the expected return on investments, the use of proceeds raised from investors, and the use of proceeds provided by lenders.

### *False Statements to Investors to Obtain Investments and Loans*

4.  It was further part of the scheme that defendant ROGERS solicited and obtained money from investors, both in the form of investments and loans, by making and causing to be made false representations about Sports Card Plus and Rogers Photo Archive, including by falsely stating and causing to be falsely stated that money investors provided to Sports Card Plus and Rogers Photo Archive would be used to fund the digitization, marketing, and sale of photographs from certain archives, when defendant knew that was false.

5.  It was further part of the scheme that, in order to obtain money from investors, defendant ROGERS falsely represented that he had secured contracts to purchase certain collections of sports memorabilia and photograph archives, and found buyers to purchase these collections and archives at a profit, when he knew these statements were false because the deals did not exist and because he often created forged contracts that were shown to investors.

6.  It was further part of the scheme that, at times, defendant ROGERS falsely represented to investors that their investments or loans would be and were secured by property, including photograph archives and sports memorabilia owned by defendant ROGERS and/or one of his companies, when defendant ROGERS knew the investments and loans were not secured because he either made up the named

property that purportedly served as collateral, created phony memorabilia to serve as collateral, or did not have an interest in the property he pledged as collateral.

7. It was further part of the scheme that defendant ROGERS told investors he would use their funds for the digitization, marketing, and sale of photographs from certain archives, when he intended to and did misappropriate the investor funds to pay prior investors he previously defrauded, to pay debts for sports memorabilia, and to pay for personal and business expenses, including the acquisition of additional photo archives.

### *Player 1 Heisman Trophy*

8. It was further part of the scheme that defendant ROGERS falsely represented to Investor 1 and others that he possessed an authentic Player 1 Heisman Trophy and was willing to provide it as collateral for a loan, when defendant ROGERS knew he did not possess an authentic Player 1 Heisman Trophy.

9. It was further part of the scheme that defendant ROGERS fraudulently obtained a loan from Investor 1 by submitting false information about the value of the collateral for the loan. More specifically, defendant ROGERS caused a Player 1 Heisman Trophy nameplate to be affixed to the Individual 1 Heisman Trophy, and then pledged that trophy as collateral, in order to make it fraudulently appear to Investor 1 that the more valuable Player 1 Heisman Trophy was the collateral for the loan.

4

10. It was further part of the scheme that defendant ROGERS created a letter, dated March 9, 2009, purportedly signed by Player 1, attesting to the authenticity of the Player 1 Heisman Trophy, without the knowledge or consent of Player 1, and provided that letter to Investor 1 to obtain a loan, when defendant ROGERS knew the letter was false and fraudulent.

11. It was further part of the scheme that, on or about January 31, 2011, defendant ROGERS sent Investor 1 the following additional documents via electronic mail, both of which he knew were false and fraudulent: (i) an email dated January 29, 2011, purporting to document defendant ROGERS' ownership interest in the Player 1 Heisman Trophy; and (ii) an email dated January 31, 2011, from Individual A, stating that the Player 1 Heisman Trophy was original and valued at between $175,000 and $225,000.

12. It was further part of the scheme that on February 14, 2012, defendant ROGERS provided the Individual 1 Heisman Trophy with the fraudulent nameplate as collateral for a $100,000 loan he obtained from Investor 1, knowing that he had falsely represented the true nature of the collateral.

### *False Statements to Financial Institutions to Obtain Loans*

13. It was further part of the scheme that defendant ROGERS used phony sports memorabilia, fraudulent contracts, and other phony documents he created to secure loans for Sports Card Plus and Rogers Photo Archive, LLC of more than $4 million from multiple financial institutions in Arkansas.

14. It was further part of the scheme that, in or about April 2013, defendant ROGERS secured a $3,500,000 loan from Financial Institution 1 and falsely represented that the loan was secured by sports memorabilia owned by defendant ROGERS, when defendant ROGERS knew the loan was not secured because he directed Employee 1 to create phony memorabilia to serve as the collateral for the loan.

15. It was further part of the scheme that, in or about December 2013, defendant ROGERS secured a $900,000 loan from Financial Institution 2 and falsely represented to Financial Institution 2 that Rogers Photo Archive would use the loan proceeds to pay for scanning equipment the business had purchased for $900,000. Defendant ROGERS knew these representations were false because the business had not purchased the equipment, and the invoice he provided to Financial Institution 2 to support the loan application was a phony document that defendant ROGERS had directed Employee 2 to create using a fictitious company name.

### *Sale of Fraudulent Sports Memorabilia to Further the Scheme*

16. It was further part of the scheme that defendant ROGERS sold customers and clients various sports memorabilia items that he knew were not authentic because he had either created the items himself or altered them to make them appear authentic. At times, defendant ROGERS used fraud proceeds he received from investors and financial institutions to repay customers who detected his sale of phony items.

17. It was further part of the scheme that defendant ROGERS created and caused to be provided to customers documents designed to make items for sale appear to be genuine, when he knew these documents were false, including fraudulent letters and certificates of authenticity for memorabilia, fraudulent hologram stickers from a major auction house, phony stamps, and phony embossers.

18. It was further part of the scheme that defendant ROGERS created and used email accounts in the names of other individuals in order to defraud victim customers and investors. Defendant ROGERS created an email account using the name of Dealer 1, and later forwarded an email from that account to a sports memorabilia customer in order to make the customer believe that Dealer 1 had made certain representations about an item and to convince the customer to purchase the item. Defendant ROGERS knew at the time that Dealer 1 did not make the representations contained in the email because defendant ROGERS had created the email account in Dealer 1's name and drafted the email he sent to the customer, without the consent of Dealer 1.

19. It was further part of the scheme that defendant ROGERS misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of the scheme, the purposes of the scheme, and acts done in furtherance of the scheme.

20. On or about January 31, 2011, at Lansing, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN ROGERS,

defendant herein, for the purpose of executing the scheme to defraud, did knowingly cause to be transmitted in interstate commerce by means of wire communication, certain writings, signs, and signals, from Lansing, Illinois to a location outside of Illinois, namely an electronic email message sent from Individual A to defendant ROGERS, which email defendant ROGERS knew falsely confirmed the authenticity of the fraudulent Player 1 Heisman Trophy;

In violation of Title 18, United States Code, Section 1343.

*Zachary T. Fardon, by JRF*
UNITED STATES ATTORNEY