




MAR 06 2017

Judge Thomas M. Durkin
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JOHN ROGERS

No. 16 CR 575

Judge Thomas M. Durkin

### PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant JOHN ROGERS, and his attorney, J. BLAKE HENDRIX, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.     The information in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

3.     Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

## **Factual Basis**

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

Beginning no later than 2009 and continuing until in or about January 2014, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant JOHN ROGERS devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from investors, customers, and financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.  ROGERS used his companies, Sports Card Plus and Rogers Photo Archive, LLC, to carry out the scheme to defraud.

More specifically, ROGERS was the owner and president of Sports Card Plus and Rogers Photo Archive, LLC, both of which were headquartered in North Little Rock, Arkansas. Sports Card Plus' business included the purchase and sale of sports memorabilia. Rogers Photo Archive contracted with publishing organizations to digitize photograph archives. ROGERS operated, controlled, and managed all business operations, activities, and affairs of Sports Card Plus and Rogers Photo Archive.

During the scheme, ROGERS fraudulently obtained money from numerous investors, customers, and financial institutions, by making and causing to be made

2

materially false statements about Sports Card Plus and Rogers Photo Archive, including false statements about the assets held by the companies, the total value of those assets, the expected return on investments, the use of proceeds raised from investors, and the use of proceeds provided by lenders.

In order to obtain money from investors, ROGERS falsely represented that he had secured contracts to purchase certain collections of sports memorabilia and photograph archives, and found buyers to purchase these collections and archives at a profit, when he knew these statements were false because the deals did not exist and because he created forged contracts that he showed to investors. ROGERS also falsely represented to investors that their investments or loans would be and were secured by property, including photograph archives and sports memorabilia that ROGERS owned. In fact, the investments and loans were not secured because ROGERS either made up the named property that purportedly served as collateral, created fake memorabilia to serve as collateral, or did not have an interest in the property he pledged as collateral.

One instance of ROGERS pledging fraudulent collateral involved a $100,000 loan from Investor 1. Defendant represented to Investor 1 that the collateral for the loan would be a Heisman Memorial Trophy Award issued to Player 1. In fact, ROGERS knew that was false and that the collateral for the loan was something worth significantly less than he represented.

3

The Heisman Memorial Trophy Award, which is commonly referred to as the Heisman Trophy, is awarded annually to the player deemed the most outstanding player in collegiate football, and has been awarded annually since its creation in 1935. On rare occasions, a ceremonial Heisman Trophy is awarded to individuals who did not play college football. One such instance occurred in 1960 when Individual 1 was awarded an honorary Heisman Trophy for serving as the master of ceremonies at the Heisman Trophy banquet sponsored by the Downtown Athletic Club in New York City for over 20 years.

In November 2009, ROGERS purchased the Individual 1 Heisman Trophy for $50,363. He then hired a trophy shop to create a Heisman Trophy nameplate with Player 1's name, which he attached to the Individual 1 Heisman Trophy. Player 1 is a former Heisman Trophy winner and it is widely recognized in the sports memorabilia industry that, since 1999, Player 1 is one of a few Heisman Trophy winners who have sold their trophies. ROGERS knew that a Player 1 Heisman Trophy held significantly more value than an Individual 1 Heisman Trophy.

ROGERS falsely represented to Investor 1 and others that he possessed an authentic Player 1 Heisman Trophy and was willing to provide it as collateral for a loan. As part of the scheme, on or about January 31, 2011, ROGERS sent Investor 1 the following documents via electronic mail: (i) a letter purportedly signed by Player 1, dated March 9, 2008, attesting to the authenticity of the Player 1 Heisman Trophy; (ii) an email from ROGERS dated January 29, 2011, documenting his ownership

4

interest in the Player 1 Heisman Trophy; and (iii) an email dated January 31, 2011, from Individual A, stating that the Player 1 Heisman Trophy was original and valued at between $175,000 and $225,000.

At the time ROGERS caused these documents to be sent to Investor 1, he knew they were false and fraudulent. More specifically, he knew that the letter purportedly signed by Player 1 attesting to the authenticity of the Player 1 Heisman Trophy was false because ROGERS created and signed the letter without the knowledge or consent of Player 1. ROGERS also knew the other documents were false, including the email from Individual A, because ROGERS knew that Individual A had never physically inspected the purported Player 1 Heisman Trophy and ROGERS did not own a Player 1 Heisman Trophy.

After receiving the 2011 email, on February 14, 2012, Investor 1 loaned ROGERS $100,000 and ROGERS provided the fraudulent Player 1 Heisman Trophy to Investor 1 as collateral. As part of the agreement, ROGERS was to pay Investor 1 $140,000 before February 14, 2014, and Investor 1 would then return the trophy to ROGERS. However, in the event ROGERS did not pay the $140,000 by February 14, 2014, then all rights to the trophy rested solely with Investor 1. Investor 1 was not aware that the collateral provided by ROGERS was not an authentic Player 1 Heisman Trophy and was worth significantly less than ROGERS represented.

On or about January 31, 2011, at Lansing, in the Northern District of Illinois and elsewhere, as part of and to advance the scheme, ROGERS did knowingly cause

5

to be transmitted in interstate commerce by means of wire communication certain writings, signs, and signals, from Lansing, Illinois, to a location outside of Illinois, namely, an electronic email message sent from Individual A to ROGERS, which email defendant ROGERS knew falsely confirmed the authenticity of the fraudulent Player 1 Heisman Trophy.

Also as part of the scheme, ROGERS used fake sports memorabilia, fraudulent contracts, and other phony documents he created to secure loans for Sports Card Plus and Rogers Photo Archive, LLC of more than $4 million from multiple financial institutions in Arkansas. For example, in April 2013, ROGERS secured a $3,500,000 loan from Financial Institution 1 and falsely represented the loan was secured by sports memorabilia that ROGERS knew was not authentic because he created the memorabilia to serve as the collateral for the loan. Additionally, in December 2013, ROGERS secured a $900,000 loan from Financial Institution 2 and falsely represented that the loan proceeds would be used to pay for scanning equipment. ROGERS knew these representations were false because the business had not purchased the equipment, and the invoice he provided to Financial Institution 2 to support the loan application was a phony document ROGERS had directed Employee 2 to create.

Finally, during the scheme, ROGERS also sold customers various sports memorabilia items that he knew were not authentic because he had either created the items himself or altered them to make them appear authentic. For example,

ROGERS created and caused to be provided to customers documents designed to make items for sale appear to be genuine, when he knew these documents were false, including fraudulent letters and certificates of authenticity for memorabilia, fraudulent hologram stickers from a major auction house, phony stamps, and phone embossers. On some occasions, ROGERS used fraud proceeds he received from investors and financial institutions to repay customers who detected his sale of fraudulent items.

7.      The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## **Maximum Statutory Penalties**

8.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

7

c.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.    Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following

8

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2016 Guidelines Manual.

### b. Offense Level Calculations.

i. The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii. The offense level is increased 20 levels pursuant to Guideline § 2B1.1(b)(1)(K) because the loss is more than $9,500,000 but less than $25,000,000.

iii. Pursuant to Guideline § 2B1.1(b)(2)(A)(i), defendant's offense level is increased by two levels because the offense and relevant conduct involved ten or more victims.

iv. Pursuant to Guideline § 2B1.1(b)(10)(C), defendant's offense level is increased by two levels because the offense involved sophisticated means, and defendant intentionally engaged in or caused the conduct constituting the sophisticated means.

v. Pursuant to Guideline § 2B1.1(b)(16)(A), defendant's offense level is increased by two levels because defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense and relevant conduct.

vi.       Pursuant to Guideline § 3B1.1(a), defendant's offense level is increased by four levels because defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.

vii.       Pursuant to Guideline § 3C1.1, defendant's offense level is increased by two levels because defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense and the obstructive conduct related to the defendant's instant offense and relevant conduct.

viii.       If the Court determines at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level will be appropriate. The government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a).

ix.       If the Court determines that defendant has fully accepted responsibility within the meaning of Guideline § 3E1.1(a), and that the offense level is 16 or higher prior to the application of any reduction for acceptance of responsibility

pursuant to § 3E1.1(a), the government will move for an additional one-level reduction in the offense level pursuant to Guideline § 3E1.1(b) because defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

        c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

        d.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

11

e. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

11. Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline

12

§ 5Kl.l, to depart downward from the low end of the applicable guideline range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 50 percent of the low end of the applicable guideline range. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

13.    If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.    Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to victims in an amount to be determined by the Court at sentencing,

which amount shall reflect credit for any funds repaid prior to sentencing. Defendant also agrees to pay additional restitution, arising from the relevant conduct set forth above, in an amount to be determined by the Court at sentencing, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

16.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

17.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

19.     Defendant agrees to waive and abandon any right, title, or interest he has in all property seized by the Federal Bureau of Investigation during searches of the following properties on January 28, 2014:  (1) 3700 Avondale Road, North Little Rock, Arkansas, (2) 2501 North Poplar Street, North Little Rock, Arkansas, (3) 2401 North Poplar Street, North Little Rock, Arkansas, and (4) 115 East 24th Street, North

14

Little Rock, Arkansas. Defendant understands that the government, after publication of notice to any others who may have an interest in any non-fraudulent property, will seek an order of abandonment from the Court, thereby authorizing the United States to destroy or otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 16 CR 575.

21.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

22.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Right to be charged by indictment**. Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

16

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.     **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of

18

counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

23.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

24.     Defendant understands that he has the right to have the criminal charge in the information brought within five years of the last of the alleged acts constituting the specified violation. By signing this document, defendant knowingly waives any right to have the charge in the information brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charge in the information was brought.

25.     Defendant understands that he has the right to be prosecuted for any criminal offense in the district or districts where the offense was committed. By signing this Agreement, defendant knowingly consents to prosecution of the charge against him in the Northern District of Illinois and waives any objection to the venue of this prosecution.

### Presentence Investigation Report/Post-Sentence Supervision

26.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

27.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

28.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the

disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

29.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

30.    Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate

federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and his spouse. Nothing in this paragraph or the preceding paragraph precludes defendant and his spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

31. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

32. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

33. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court

permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

34.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

35.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

36.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _3/6/2017_

_____
for ZACHARY T. FARDON
United States Attorney

_____
DEREK OWENS
Assistant U.S. Attorney

_____
JOHN ROGERS
Defendant

_____
J. BLAKE HENDRIX
Attorney for Defendant

24