## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JOHN ROGERS

No. 16 CR 575

Judge Thomas M. Durkin

### MEMORANDUM OPINION AND ORDER

Defendant John Rogers has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582. R. 53. That motion is denied.

### Background

Rogers pled guilty to wire fraud in connection with a number of fraudulent schemes, many involving his sports memorabilia and photo archive business. After he pled guilty, Rogers was accused of domestic assault. The victim then reported to the FBI that Rogers has continued to engage in fraudulent activity even after his guilty plea. On the basis of that evidence, the Court ordered Rogers taken into custody on November 20, 2017 pending his sentencing.

On December 20, 2017, the Court sentenced Rogers to 144 months' imprisonment, to be followed by three years' supervised release, and ordered payment of $23,552,370 in restitution to 26 victims. Rogers has served about 32 months, or 22%, of his 144-month sentence. But the parties agree that Rogers's projected release date is February 2, 2028, meaning that he has served approximately 24% of his anticipated actual length of incarceration.

Rogers is incarcerated at Forrest City Low FCI, in Arkansas. Of the 1,834 inmates, 671 of 1,664 tested for COVID-19 have tested positive.[1]

## Analysis

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a term of imprisonment upon a motion of the defendant, "after the defendant has fully exhausted all administrative rights to appeal" and 30 days has passed without the Bureau of Prisons filing a motion on the defendant's behalf. The government concedes that Rogers has exhausted his administrative remedies and that the Bureau of Prisons has not pursued his request for early release.

In determining whether release under § 3582 is appropriate, courts are to consider: (1) the factors set forth in 18 U.S.C. § 3553(a); (2) whether "extraordinary and compelling reasons" warrant a reduction in sentence; and (3) whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of establishing his entitlement to relief under this provision. *See United States v. Gold,* 2020 WL 2197839, *1 (N.D. Ill. May 6, 2020) (citing *United States v. Ebbers,* 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020)).

The Sentencing Commission's policy on sentence reduction states that "the court may reduce a term of imprisonment . . . if, after considering [the § 3553(a) factors] . . . the court determines" that: (1) extraordinary and compelling reasons

---

[1] *See* https://www.bop.gov/coronavirus/ and https://www.bop.gov/locations/institutions/for/.

warrant the reduction; (2) the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g); and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 11B1.13. The Sentencing Commission's policy statement describes four situations constituting "extraordinary and compelling reasons." The first three are inapplicable here. But the fourth is a catch-all provision entrusting courts with the discretion to find that any "reason other than . . . the reasons described" in the policy statement also constitutes an "extraordinary and compelling reason" to reduce a sentence. *Id.* cmt. n. 1.

### A.     Extraordinary and Compelling Reasons

A motion to reduce a sentence may only be granted on a showing of "extraordinary and compelling reasons." This Court and many others around the country have found that the mere existence of the COVID-19 pandemic in the country generally, or in a particular correctional facility, does not constitute an "extraordinary and compelling reason" to reduce a sentence. *See*, *e.g.*, *United States v. Friday*, 16 CR 633 (N.D. Ill. June 16, 2020), R. 101; *United States v. Allegra*, No. 15 CR 243 (N.D. Ill. April 13, 2020), R. 232 at 7 (quoting *United States v. Eberhart*, 2020 WL 1450745, *2 (N.D. Cal. Mar. 25, 2020)); *Gold*, 2020 WL 2197839 at *2; *United States v. Munguia*, 2020 WL 1471741, at *4 (N.D. Tex. Mar. 26, 2020). A contrary finding would imply that all inmates should be released, which is neither appropriate nor feasible. And COVID-19 poses minimal risk of serious health complications to the vast majority of people.  However, courts have also found that an extraordinary and compelling reason to reduce an inmate's sentence can arise if

the inmate's underlying health condition makes him particularly vulnerable to serious health complications should he contract COVID-19.

Rogers argues that his asthma and history of respiratory illness demonstrate that he is at higher risk for severe illness from COVID-19. But Rogers's medical records indicate that his asthma is "well-controlled." Rogers also claims that he has scarring on his lungs. But the government points out that he failed to cite any record supporting this claim, and Rogers did not rectify this discrepancy in his reply brief. Further, his history of pneumonia and bronchitis is not considered a risk factor by the Centers for Disease Control.

The government, however, points out that Rogers is obese, which is considered a risk factor by the CDC. On this basis, the governments concedes that there is an extraordinary and compelling reason for Rogers to be released.

### B.    Section 3553(a) Factors

In addition to there being an "extraordinary and compelling" reason for release, the Court must find that Rogers's release would comport with the factors in § 3553(a). Those factors "require courts to consider both utilitarian and retributivist principles in imposing sentences [such that] defendants should receive sentences of adequate length relative to the severity of their crimes, and also long enough to make them examples to others who consider committing similar crimes." *United States v. Rainone*, 09 CR 206 (N.D. Ill. June 19, 2020), R. 180 at 6.

The Court first addresses "the nature and circumstances of the offense" and "the kinds of sentences available." 18 U.S.C. § 3553(a)(1), (3), (4). Rogers's guidelines

range was 262 to 327 months. But his crime was subject to a statutory maximum of 240 months. From any perspective, his sentence of 144 months was lenient considering the extent of his crimes—stealing more than $23 million from 26 victims. There can be no question that the sentence Rogers received was just and fit the crime.

Since Rogers's original sentence was more than appropriate, reducing it would disrespect the seriousness of his crime and principles of justice. *See* 18 U.S.C. § 3553(a)(2)(A). The fact that Rogers has served only a small portion of his sentence also means that his early release could diminish the deterrent effect of his original sentence. *Id.* (a)(2)(B). Rogers's fraud was extensive, and he must be held to account.

While deterrent effect is generally considered with respect to society as a whole, the Court is equally concerned with deterrent effect on Rogers himself. He has already demonstrated a propensity to commit crimes even when he is under close scrutiny of law enforcement, showing the risk of recidivism is high. *Id.* (a)(2)(C). The Court believes that the length of Rogers's original sentence is necessary to impart on him the seriousness of his crimes and to create a disincentive for him to commit further crimes when his sentence is complete. Rogers argues that he has reformed himself while in prison. Maybe so. But the evidence suggests that he has difficulty following the law while free. And as discussed, Rogers's crimes were not small. He caused great financial harm to a large number of victims. Considering the risk of recidivism and the fact that Rogers's crimes have caused great harm, the Court believes that continued incarceration is necessary to protect the public.

Lastly, § 3553(a) requires the Court to consider "the need for the sentence imposed to provide the defendants with needed . . . medical care . . . in the most effective manner." *Id.* (a)(2)(D). Other than the presence of COVID-19, Rogers has not made any argument that his health conditions cannot be adequately managed in prison. He has not made any showing that his release is necessary to more effectively address his health conditions. The Court does not believe Rogers's recent inhalation of insecticide (reported to the Court without context) is relevant evidence of conditions in the prison generally or of Rogers's health condition in particular.

Therefore, the factors in § 3553(a) suggest that a reduction in Rogers's sentence would be inappropriate.

## Conclusion

Rogers's health, in combination with the COVID-19 pandemic, creates an extraordinary and compelling reason to release him early. The Court has granted a motion by a defendant who demonstrated similar extraordinary and compelling reasons. But in that case, the defendant had already served more than 80% of his sentence.[2] The Court finds that the concern presented by Rogers's health in the context of the pandemic is outweighed by the extent of Rogers's crimes, the need to demonstrate respect for justice, and the need to protect the public from future criminal harm. Therefore, Rogers's motion [53] is denied.

---

[2] *United States v. Shannon*, 2020 WL 3489491 (N.D. Ill. June 26, 2020).

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  August 17, 2020